**John Obstetar, Appellee, v. Illinois Steel Company, Appellant.**

**Gen. No. 5200.**

MASTER AND SERVANT—*what risks assumed.* Held, under the evidence in this case, that the plaintiff was injured because of assumed risk, namely, a latent defect in a water tube which no inspection could have discovered, by reason of which defective tube an explosion resulted.

Action in case for personal injuries. Appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1909. Reversed with finding of facts. Opinion filed March 11, 1910. Rehearing denied April 13, 1910.

GARNSEY & WOOD, for appellant.

DONAHOE, MCNAUGHTON & MCKEOWN, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action on the case brought by John Obstetar against the Illinois Steel Company, to recover damages for injuries sustained by him while in the employ of the defendant as a boiler washer. The case was tried upon two counts. The first count contains a general charge of negligence on the part of the defendant in permitting its boilers to become in bad and unsafe repair by means whereof the plaintiff while washing a boiler in close proximity to another boiler was injured in consequence of the explosion of said other boiler. The second count alleges negligence on the part of defendant in permitting the interior of the flues to become dirty, covered with scale, weakened and burnt out, and that the defendant neglected to inspect the boilers at proper times and with proper care. On the trial plaintiff obtained a verdict for $5,000 on which judgment was rendered and the defendant appeals.

The evidence shows that the boilers of appellant company are what are termed Sterling water tube boilers in which the drums, tubes and flues are the water and steam containers. Viewed from the outside, each boiler is a rectangular brick structure about twelve feet wide, twenty feet long and twenty-two feet high. This structure forms the fire box and while the boiler is in operation is filled with flames and hot gases, and within these walls the entire boiler proper is contained except where the heads of the drums protrude through the walls. Within the lower part of the fire box and horizontally across it, towards the back of it, are two drums called mud drums, each about the same distance from the bottom; these are about a foot apart and connected by tubes so that water may circulate from one to the other; each of these drums is about four feet in diameter and twelve feet

long.  There are also three other horizontal drums near the top of the fire box, one near the front, one about the center and the third near the back.  The front and back drums are four feet in diameter and the middle drum is five feet in diameter and all extend across the fire box.  A person looking into the fire box through the door in front sees four rows of water tubes running from the lower front drum to the upper front drum; each row extends across the fire box from wall to wall.  There are sixteen tubes in each row; each tube is about sixteen feet long and about four or four and a half inches in diameter.  Behind this bank of tubes is a wall of fire brick three inches thick extending from the mud drum to within about two feet of the top front drum so that this wall slants towards the front of the boiler.  A similar set of rows of water tubes runs from the front mud drum behind the fire wall to the upper middle drum.  Behind this bank of tubes is another fire wall extending from the upper middle drum to within about two feet of the space between the mud drums.  A similar set of water tubes runs from the back mud drum to the upper back drum.  The upper drums are also connected by what are called circulating flues; one set extends from the front drum to the middle drum and another from the middle drum to the back drum.  These circulatory flues run from the upper sides of the drums.  There are also circulating flues connecting the two upper front drums at their lower sides.  Above these circulating flues, which are slightly arched, are laid steel sheets and upon these sheets are laid the masonry which forms the top of the boiler.

The boilers are fired with waste gas from the blast furnaces.  The fire first strikes the front rows of tubes, then goes up over the front fire wall between it and the front upper drum, then strikes the middle set of tubes, then goes under the middle fire wall and then strikes the third set of tubes and thence out of the

boiler. A series of boilers are connected together discharging steam into a steam feed pipe.

At the time of the accident appellee was standing on a platform by the side of number two boiler washing it, it having been shut down for that purpose. While there an explosion occurred in the number three boiler near number two, displacing bricks and plates at the top of the boiler and severely burning the appellee. It is claimed by the appellee he was injured by the explosion and bursting of one of the circulatory flues in the number three boiler. It is claimed on the part of the appellant that what burst was a tube in the seventh row of tubes, one that runs from the front mud drum to the middle drum.

The only witness who testified on behalf of plaintiff as to what exploded was a man named John Pruss, a witness who spoke English imperfectly. At the time of the accident Pruss was employed as a boiler washer's helper, but he was not present at the time of the accident and did not see the exploded boiler until after it had been repaired, when he washed the boiler. He testified that at that time two sheets of steel which support the masonry above the boilers were out of place and that he saw a new steel circulating flue in the boiler between the middle and back drum. He says that the boiler was very dirty, that he never washed as dirty a one before; "that boiler may be dont was wash for a year before it was cleaned. In seven or eight days there cant be so much scale in the boiler if you never touch them. Cant be so much scale in that boiler for a month if you dont touch them at all." He also testified when he got through washing the boiler the mud drum was filled with scale up to the manhole; that the amount of scale was six times as much as in any other boiler he ever washed; that the other circulating flues had scale on them but this one was clean and that there was no new tube in that boiler or tube that had been repaired; and that the flue introduced in evidence by appellant was not the one that

burst. He says that he cleaned out all the tubes connecting the middle and the mud drums and that every one was dirty, and that there was so much scale in the tubes that the cleaning machine would not go into the tubes.

On behalf of appellant William McMullen, a foreman of boilers, testified that number three boiler was put in in 1905, and it was inspected every eighteen or nineteen days both inside and out. Frank Sullivan, a boiler chipper, testified that the boilers were inspected every eighteen or twenty days, but he did not know when number three was inspected. Daniel Sullivan, a boiler chipper working with appellee when he was injured, testified that the boiler that exploded was washed within two weeks before the accident. William Fitzgerald, a boiler inspector for the appellant, testified to the method of inspection, and that he had inspected the boiler that exploded eight or nine days before the accident; that it was all right at that time; that he saw this boiler fifteen minutes after the accident and that the tube that gave way was in the seventh row, the flue third from the manhole a foot or so from the top middle drum. He testified that the exhibit produced in court was the tube that exploded and says that it was not a circulatory flue that exploded. Peter Whalen, appellant's superintendent of boiler service, testified that he saw the boiler fifteen minutes after the accident and identified the exhibit, by punch marks which he had placed there, as the tube that exploded. Charles T. Mason, assistant engineer of appellant, testified that he saw the boiler installed; that it was tested with cold water to 225 pounds pressure, which is a more severe test than a hot one; that he examined the boiler the forenoon of the day of the accident and identified the tube which burst as a number seven tube. James Sparrow, a boiler inspector for the Casualty Insurance Company, testified that he inspected the boiler the day after the explosion before it had been washed; that it was practically in good

Obstetar v. Illinois Steel Company, 154 Ill. App. 173.

condition except the burst tube; that he examined the other tubes and found no scale on them; that he examined and tested the exploded tube; that he examined the burst part of the weld and found the knitting part was not as it should have been; that there was no test known which would ascertain such defect, and he explained the method of welding these tubes.

The very clear preponderance of the evidence is that it was not a circulatory flue that exploded, as testified to by Pruss, but a tube in the second row of the middle bank of tubes connecting the lower front drum with the upper middle drum; that the cause of the explosion was a defective weld which no inspection or test could have discovered. The proof further shows that these tubes were tested to 225 pounds; that there was a safety valve set at 150 pounds steam pressure, and there was a Bristol recording automatic pressure gauge which recorded the pressure on the boiler, and this record shows that the pressure never reached a danger point. The only evidence in the record showing neglect was that of the witness Pruss, who is mistaken as to what exploded; it is clearly shown that it was not a circulating flue that exploded, but it was a water tube, and the explosion resulted from a latent defect which no inspection could have discovered—a defect similar to the defect in Illinois Steel Company v. Laughran, 136 Ill. App. 432. The very clear weight of the evidence established that the appellee was injured because of an assumed risk—a latent defect in a water tube, and that the appellant company is not guilty of the negligence alleged in the declaration. The judgment is reversed with a finding of fact.

*Reversed.*

Finding of fact, to be incorporated in the judgment:

We find that appellee was injured by the bursting of an imperfect water tube which was an assumed risk of his employment and that appellant was not guilty of the negligence alleged.

178    APPELLATE COURTS OF ILLINOIS.

Gardner v. Chicago, Lake Shore & E. Ry. Co., 154 Ill. App. 178.

Mr. Presiding Justice DIBELL took no part in the decision of this case.